## VALLOTON *a.* SEIGNETT.

*Supreme Court, First District; Special Term, Sept.* 1855.

INJUNCTION.—SUMMARY PROCEEDINGS TO DISPOSSESS A TENANT.

The Supreme Court has power to decree a specific performance of a covenant by a landlord, in a lease, to make repairs.

But this power will only be exercised when it appears that the tenant would be irreparably injured without a specific performance of the covenant to repair, and that damages would not afford a sufficient compensation.

Where a tenant, in consequence of the neglect of the landlord to repair pursuant to his covenant, was compelled to remove temporarily from the building, and the landlord commenced proceedings pursuant to 2 Revised Statutes, 512, to dispossess the tenant and annul the lease,—*Held* under the circumstances, the tenant had no adequate remedy at law, and that the landlord should be enjoined from further proceedings under the statute.

Action for a specific performance, injunction, &c.

The facts involved sufficiently appear in the opinion of the court.

CLERKE, J.—This is an action commenced by a tenant against her landlord:

1. To compel the specific performance of a covenant in the lease, to repair and protect the building.

2. To recover damages for the breach of this covenant, or to *recoupe* the rent claimed by allowing those damages; and,

3. To obtain an injunction, restraining the defendant from taking any proceedings to dispossess the plaintiff, and particularly from taking possession under proceedings, commenced before Judge Birdsall of the Marine Court, on the ground that the demised premises were deserted by the tenant.

A temporary injunction was issued. Shall it be continued to the hearing?

I. Were a case presented to the equitable consideration of this court, showing that the tenant would be irreparably injured without a specific performance of the covenant to repair, and that damages would not afford a sufficient compensation, such specific performance would be compelled.

It is not, therefore, correct to say, that the court have not the *power* to decree it in cases of this nature, although this power, as far as I can ascertain, has rarely, if ever, been exercised, principally, because damages were considered to constitute an adequate redress, and because the difficulty and inconvenience of carrying such a decree into execution would be practically very great.

The present case presents no circumstances to induce a departure from the general practice.

The plaintiff has an ample remedy in an action on the covenant for any damages which she has sustained, or which she may hereafter sustain. On this ground, therefore, she is not entitled to the equitable interposition of the court.

II. But, does the plaintiff show that any other acts or proceedings of the defendant will eventuate in injuries, which cannot be redressed at common law?

The plaintiff states, that in consequence of the neglect of the defendant to repair and protect the building, it became unsafe for her to reside in it, and that she was compelled to remove at great expense, and to the ruin of her business.

She states, however, that she did not remove with intent to abandon the premises, or to give up her lease, which by its terms would not expire until the 1st of May, 1858. She intended, and still intends, notwithstanding her removal, to require the defendant to keep his covenants.

Valloton *a.* Seignett.

The defendant having ascertained that she left the premises, proceeded to obtain possession under those sections of the Revised Statutes (2 *Rev. Stats.* 512, *Art.* 2) relative to "summary proceedings to recover the possession of land," enabling a landlord to recover possession, when a tenant, being in arrear for rent, deserts the demised premises.

Section 24 of the statute provides in such cases, and where there are no goods subject to distress, that any justice of the peace at the request of the landlord, upon viewing the premises, and upon such view being satisfied of the desertion, shall affix a notice in writing upon a conspicuous part of the premises, requiring the tenant to appear, and pay the rent due, at some time specified in the notice, not less than five nor more than twenty days.

Section 25, then, provides that at the time specified, the justice shall again view the premises; if the tenant appear and deny that *any* rent is due to the landlord, all proceedings shall cease; if he shall not appear, and shall not pay the rent in arrear, then the justice may put the landlord into possession; *and any lease of the premises to such tenant shall from thenceforth become void.*

Now, it will be at once perceived, that in proceedings to recover possession *for the desertion of the premises,* unless the tenant can appear and deny that *any* rent is due, he absolutely is not entitled to a hearing; *and his lease is annulled.*

If he owes a dollar of the rent claimed, he cannot make this denial.

The plaintiff in this action cannot deny that *any* rent is due; for, she admits she occupied the premises during a few days of the quarter for which the defendant claims rent; but, she insists upon a deduction, proportionate to the time during which the dilapidated condition of the building rendered it unsafe for her to live in it; for the defendant was bound by his covenant to prevent this dilapidation.

If the proceedings before the justice are conclusive, she is without remedy; her lease is declared void; and she is, consequently, deprived of the right of suing the defendant for a breach of the covenants which it contains—at all events, for any breach committed after the lease is annulled.

The defendant violates his contract in not repairing and protecting the building; the plaintiff is unable to continue in it, except at the peril of her life; the defendant taking advantage of his own wrong, recovers possession of the premises; and the law allows him to make void the instrument, by which alone he can be made answerable for this wrong.

Can these proceedings be reviewed, so that the plaintiff may have an opportunity, which she could not have before the justice, of having the rent apportioned, and of interposing her defence, and, by paying what she alleges is due, be restored to possession and the lease revived?

Sections 26 and 27 no doubt allow an appeal to the Common Pleas of the county, at any time within three months.

The Court of Common Pleas shall examine the proceedings, and hear the *proofs and allegations* of the parties in a summary way. I presume, those are not the mere proofs and allegations before the justice; they may be new proofs and allegations, substituted or additional; but, can the tenant show anything that he could not have shown before the justice?

If he omitted to deny that *any* rent was due, he may be allowed to rectify the omission before the Common Pleas; if the preparatory steps required by the statute on the part of the justice and the landlord were disregarded or defective, the appellate court would order restitution; but, to say the least, it is very *doubtful*, whether they have authority to allow the tenant to interpose an answer and a defence, which he could not have interposed before the justice: and, if he is obliged to deny that *any* rent is due, he is remediless in the one tribunal as well as in the other.

I think the same remarks apply to the sections (2 *Rev. Stats.*, 516, §§ 47, 48, 49), which relate to *certiorari.* Doubtless in Anderson *v.* Prindle, (23 *Wend.*, 616), Chancellor Walworth expressed an opinion that those sections gave power to the Supreme Court to examine upon the merits every decision of the judge *a quo*, upon a question of law, and to affirm, reverse, or quash the proceedings, as justice should require.

But, the decision of the Supreme Court is to be based upon the *return of the inferior tribunal;* there is no provision whatever, for the new proofs and allegations allowed on the

appeal to the Common Pleas, as provided by sections 26 and 27. Manifestly, then, there is less hope for redress from section 47, than from sections 26 and 27: and these, I repeat, are too ambiguous to warrant us in saying that the plaintiff has an adequate remedy at law.

I have been referred to Wordsworth *v.* Lyon, (5 *How. Pr. R.*, 463), Smith *v.* Moffat, (1 *Barb. S. C. R.*, 65), and Hyatt *v.* Burr, (8 *How. Pr. R.*, 168), to show that this court has refused to interfere by injunction in these summary proceedings between landlord and tenant.

In all these cases, the judges acted in entire conformity with the well-known principle, that where the common law affords an adequate remedy, a court of equity will not interfere. Smith *v.* Moffat and Hyatt *v.* Burr, were cases of tenants holding over after the expiration of the term; and the court were of opinion that they had an adequate remedy by a writ of restitution, or by an action at law: in Wordsworth & Lyon, the tenant had a remedy by appeal; and, although in some of the opinions referred to, it may be inferred from the language of the judges, that they would not approve of equitable interposition in relation to summary proceedings under any circumstances, they certainly never meant to overrule the well-established and beneficent principle, that where the party is without an adequate remedy at common law, it is the province and duty of this court to exercise its equitable jurisdiction.

In the history of equitable interference, there are no cases more common or numerous than those of forfeiture for the non-payment of rent. Courts of equity will, indeed, in such cases, see that a clear compensation can be given to the landlord for the breach of the covenant, by which the forfeiture was incurred; so that he may have the full benefit of his contract as originally framed; but they will not readily permit an advantage to be taken of a forfeiture arising from a lapse of time specified for performance; and Justice Spencer (Jackson *v.* Brownson, 7 *Johns. R.*, 227, 235) says, " in most cases, it is rigorous and harsh to break up a lease for the violation of covenants, which may be compensated in damages." How much more rigorous, and how much more harsh, would it be to break up a lease, not by reason of any

forfeiture incurred by the tenant, but because she was compelled for her own personal safety, and that of her family, to abandon the premises in consequence of the violation of the landlord's covenant. To permit this landlord to proceed under the statute would, by annulling her lease, be enforcing a forfeiture, not only under circumstances most harsh and rigorous, but eminently unjust.

I shall, therefore, allow the injunction to continue, so far as to restrain the defendant from proceeding to dispossess the plaintiff, pursuant to the notice given by the justice.

---

THE PEOPLE, upon the relation of FIGANIERE, *a*. THE JUSTICES OF THE NEW YORK MARINE COURT.

*Supreme Court, First District; Special Term, September*, 1855.

APPEALS IN MARINE COURT.—MANDAMUS.

An appeal lies from the Special Term of the New York Marine Court to the General Term.

*It seems*, that, upon a fair construction of the several acts relative to the Marine Court, appeal from the Marine Court to the New York Common Pleas lies only from the decision of the General Term of the former.

Application for a mandamus requiring the justices of the New York Marine Court to vacate an order made by them, granting a new trial.

In October, 1854, the relators, Henry S. and G. I. Figaniere, commenced an action in the New York Marine Court, against one Thomas Jackson, to recover damages for an alleged trespass. The action was tried before Justice Phillips and a jury, and the plaintiffs recovered a verdict for $450. The defendant appealed to the General Term, where an order was made granting a new trial, unless the plaintiffs would consent that their verdict should be reduced to $250. The plaintiffs in the action now applied in the Supreme Court for a mandamus to compel the justices of the Marine Court to vacate this order.

*C. N. Black* for the motion, contended that the General